## Dan Maines v. The State.

*No. 669. Decided June 29th, 1895.*

**1. Murder—Self-defense—Charge—Mutual Combat.**

 On a trial for murder, where the defense was protection of the person against a violent attack made by deceased (P. C., Art. 572), and the evidence showed that defendant was forced into the fight, and acted in self-defense. Held: That it was error to charge upon mutual combat.

2. Same.

On a trial for murder, the question, whether the attack upon the person is of so violent a character as that no other means could have been resorted to in prevention of the injury, is one of fact to be submitted to the jury under appropriate instructions.

3. Jurors—Householder.

A party who lives with his father, and occupies a room in his house, in which he sleeps, is not a householder. Nor is a clerk, whose employer pays him a salary, and furnishes him a room at his house, where he eats and sleeps, a householder.

4. Jurors—Challenges Peremptory, and for Cause.

On a trial for murder, where defendant was compelled to use peremptory challenges upon two jurors, who were shown not to be householders, and before the jury was complete exhausted all his peremptory challenges; and that thereafter he proposed peremptorily to challenge a juror who, upon his voi-dire, stated that he had a fixed opinion in regard to defendant's guilt, which it would require evidence to remove, but, that he could try the case by the law and the evidence; and the court refused to permit defendant to challenge this juror peremptorily. Held: Error in overruling the peremptory challenges to the two incompetent jurors aforesaid, and this error could be availed of by the defendant under the circumstances, and constituted reversible error.

APPEAL from the District Court of Falls. Tried below before Hon. S. R. SCOTT.

This appeal is from a conviction for manslaughter, the punishment being assessed at five years' imprisonment in the penitentiary.

There is but little conflict in the testimony as to the important facts attendant upon the killing, and these facts are fully stated in the testimony of Rufus Bryant, for the State, and John C. Criswell, for defendant, which is reproduced as follows:

Rufus Bryant, for the State, testified: "I was in the back part of Ellsberry saloon, and saw the difficulty (which occurred in the back part of the saloon). I went into the saloon and saw Mr. Kimbrough, Mr. Maines (the appellant), Will Seals and Jim Vance (the deceased) in there talking. Appellant was talking very high, and said, 'Vance, I have not said anything about you, but I know who did say something about you.' Vance then said, 'Tell me who it was.' Appellant replied, 'No, I will not tell you anything about it now, because the party is not here, but wait and I will tell you,' Vance replied, 'From all I can learn, Dan, you are the man that was doing the talking, and I can whip the man that is doing it.' Appellant said that he did not want to fight, that he had no money to pay fines. Vance replied, 'I will whip you and pay your fine and my own, too.' Appellant said he had no money to pay fines, and he did not want to fight. Vance then pulled off his jumper (jacket), let down his 'galluses,' pulled up his sleeves and struck at appellant, knocking him back the first lick. Vance struck at him again; then appellant run his hand into his pocket; got his knife; opened it under his coat behind him. At this juncture they came from behind some boxes; Vance then struck appellant again; then appellant punched him in the side with a knife. Vance struck at appellant again, and he cut him with the knife. I then jerked Vance into the saloon, when he grabbed a shovel and said, 'By God, I will get you now.' I jerked him back and said,

'No, you won't,' and laid him down, when he soon died. Vance struck appellant twice before he cut him. Vance was a tall man—would weigh about 150 pounds, and was the largest of the two. He was in his shirt sleeves; had no arms except the shovel after he was struck." On cross-examination he said: "Appellant was not talking about fighting; that appellant's conversation was that he did not want to fight, and that he had no money to pay fines. He did not want to fight; he was trying to keep from fighting. He told Vance he did not want to fight, and made no preparation to fight. When Vance pulled off his 'jumper,' threw down his suspenders and rolled up his sleeves and said he could whip the man that did the talking, appellant replied that he had said nothing about him. Vance repeated that appellant had done the talking, and appellant reiterated his denial. Vance then pulled off his jumper, threw off his suspenders, rolled up his sleeves and struck appellant in the face, knocking him back a little. Appellant did not strike at him then. Vance struck him again. Appellant did not try to hit at all. Can't say whether they were hard licks or not—both licks knocked him back. Appellant pulled the knife and did the cutting after the second blow, and was moving backward when he pulled the knife. Vance never stopped advancing on him, even after he was cut. There was a cistern back of appellant, and he could not have backed any further, having gone as far as he could. The cistern kept him from going any further back. I grabbed Vance and had to throw him back. He grabbed a shovel, and I threw him back again. This was a heavy shovel used for handling coal. Appellant did not follow him, but left immediately after this. Appellant had some blood on him—don't know where it came from. Appellant seemed to be afraid of Vance."

John C. Criswell, for defendant said: "I saw the difficulty in the back yard of the saloon. I heard several words passed between Vance and appellant, and Vance then caught appellant in the collar and shook him a little. Seals got between them about this time, and Vance ran around Seals and began striking appellant, who was backing off to a cistern railing. Vance hit him again and knocked appellant back over it. Appellant was leaning back on it. This railing was about four feet high. Appellant straightened up and Vance kicked him in the pit of the stomach. It was a pretty hard kick, and when he kicked him they clinched. About this time a negro got hold of Vance, or between them, and some one, John Waters, I think, said let them fight; the negro said he would not do it. Kimbrough was there, but did not say let them fight. The railing mentioned was around an old brick cistern, and appellant had backed up against this railing, leaning on it. When Vance commenced hitting him, appellant commenced backing away towards this railing, and Vance struck appellant in the face several times after he got to the railing. I noticed blood about appellant. The licks were very hard ones, but could not see any effects of them then. Appellant was leaning over the railing and could not get any further back, and Vance struck him several very hard licks while in that position. I saw appellant after the

trouble; he was badly bruised up about the face,.eyes and nose, and there was blood on his face and shirt.   These men were about the same weight, Vance being the taller of the two.   I heard Maines say that he did not want to fight, and heard him tell Vance so.   Appellant said he wanted no trouble.   Vance said he was going to whip him, and told appellant he would loan him an inch or two in size.   Aaron Morris, the jailor, testified that he had appellant in custody on the evening after the trouble; that his eye and face were about as black as they could be from blows in the face, and his nose also had some kind of a mark on it; that he had him in custody about ten days, and these bruises were still on his face when he released him.

The charge of the court upon mutual combat was as follows:

"You are further charged, that where in a sudden quarrel between persons, both parties engage in the contest willingly, fight upon equal terms, and neither party takes undue advantage, nor seeks to take undue advantage of the other, if death ensues, the killing in that event would amount to manslaughter.   Should one party engaging in such quarrel seek or take undue advantage of his adversary, and slays him, the killing in that event would be murder.   So in this case, if you find that deceased, Jim Vance, and defendant, at the time and place charged by the indictment, did, while engaged in a quarrel with each other, willingly fight together upon equal terms, and an advantage was taken, or sought to be taken by the defendant of the said Jim Vance; and you find that said Jim Vance was killed by defendant in such conflict, if any, then the defendant would be guilty of no higher offense than manslaughter.   But should you find, that while so engaged—that is, willingly fighting with each other upon equal terms—with each other, the defendant took undue advantage of said Vance in said conflict, if any, and thereby cut and killed said Vance, then, and in that event, he would be guilty of murder, the degree of which you will determine from the evidence under the instructions hereinbefore given you."

This charge was excepted to by defendant because there was no evidence to warrant it; and defendant, upon this issue, prepared and submitted a requested instruction, which was refused by the court.   This instruction was as follows:

"You are charged that the facts of this case do not raise any issue of mutual combat, and don't show that the defendant voluntarily entered into or engaged in a fight with the deceased, but on the contrary, shows that defendant avoided the same; therefore, you will not consider any argument of counsel based upon such an assumed phase of the case."

*Swann & Clampitt, James Gameson, Rice & Bartlett,* for appellant.—Where the evidence shows no actual agreement or intent to fight, but that the conflict was brought on by the deceased, and that appellant did not voluntarily engage therein, but that in resisting the attack of the deceased he either acted upon real or apparent danger, such proof excludes the idea of mutual combat, and it is error to so charge.

When ere is no evidence calling for or warranting a charge upon mutual combat it is error for the court to submit such a charge, and it is reversible error when the charge is excepted to at the time it is given and a special charge is asked and refused, wherein appellant requests the court to charge the jury not to consider the law of mutual combat or any argument of counsel based thereon. Kelly v. State, 27 Tex. Crim. App., 562; Rosborough v. State, 21 Tex. Crim. App., 672; Amer. and Eng. Ency. of Law, Vol. p. 585; Tate v. State, 46 Geo. Rep., 148; Everett v. State, 30 Tex. Crim. App., 682.

The court erred in holding that the juror, B. F. Harris, was a fair and impartial juror. Code Crim. Proc., Art. 777, Sub. 8; Long v. State, 32 Tex. Crim. Rep., 140; Armendaries v. State, 10 Tex. Crim. App., 44; Graham v. State, 28 Tex. Crim. App., 582; Sewell v. State, 15 Tex. Crim. App., 56; Rothschilds v. State, 7 Tex. Crim. App., 519; Henrie v. State, 41 Texas, 573; Hanks v. State, 21 Tex., 526; Owen v. State, 35 Texas, 361.

The court erred to defendant's prejudice in overruling defendant's challenge for cause to the jurors, Bazil Curry, Swearengen and B. F. Foster. No person is a competent juror is this State unless he is a freeholder in the State or householder in the county. No person is a competent juror who has any bias or prejudice in favor of or against the accused, or who has any such opinion as to the guilt or innocence of defendant, when empanelled, as would likely influence his action in finding a verdict.

It is reversible error to overrule appellant's challenge for cause to a juror for either of the reasons complained of in last two propositions, when it appears that by reason thereof he was compelled to exhaust his peremptory challenges and was forced to take a juror who was objectionable to him. Revised Civ. Stats., Arts. 631, 636; Lane v. State, 29 Tex. Crim. App., 319, and cases cited.

*Mann Trice*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—This is a conviction for manslaughter. Appellant relied upon self-defense, under article 572, Penal Code. The court submitted to the jury the law applicable to a mutual combat in which the accused obtained an undue advantage of the deceased by resorting to weapons. The evidence both for the State and defendant establishes beyond question, not a mutual combat, but that appellant did not desire, in fact was forced into the fight, and acted in self-defense. Now, whether the nature of the attack was such as to bring the case within the provisions of article 572 was a question of fact for the jury, under proper instructions from the court. Counsel for appellant objected to the charge relating to mutual combat, because no evidence presented this issue. The charge was not demanded by any evidence in this record. Two veniremen were challenged because neither were freeholders in the State or house holders in the county. Curry lived with his father, and occupied a room in his father's house by his permission, but he had

35th Crim Rep.—8.

no right to the room, as against his father. Of course the man slept in a house, but this did not make him a householder. Swearengen was a clerk, his employer furnishing him a room at his house and giving him a salary. He ate and slept at this house. He was no householder. The court overruled these challenges, and appellant excepted. Appellant exhausted his peremptory challenges, and then challenged one B. F. Foster peremptorily. Foster, on voir dire, stated that he had formed and expressed a fixed opinion in regard to defendant's guilt, that it would require evidence to remove that opinion, but notwithstanding such opinion, he would try the defendant by the law and the evidence. The court overruled the peremptory challenge, because they were exhausted. Appellant had been wrongfully deprived of two of his peremptory challenges, or two challenges for cause, by that court, in holding Curry and Swearengen householders. Now, whether Foster should or should not have been rejected for cause, as was also requested by appellant, he was evidently such a man as would call loudly for a peremptory challenge. If his opinion was fixed—settled—that defendant was guilty, no wise man would risk his ability to discard it. The court should have sustained appellant's challenges to Curry and Swearengen for cause. This was not done, but appellent was forced to expend two peremptory challenges on them. The error could have been cured by returning to appellant peremptory challenges with which to rid the panel of objectionable jurors. This was not done. We have no time to discuss the other questions raised on this record. Same will not arise upon another trial. The judgement is reversed, and cause remanded.

*Reversed and Remanded.*